

# THE ATTORNEY GENERAL
## OF TEXAS
### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

December 23, 1947

Hon. H. D. Dodgen
Executive Secretary
Game, Fish & Oyster Commission
Austin, Texas

Opinion No. V-463

Re: The inspection tax
liability of shrimp
imported to Browns-
ville from a Mexi-
can port on a boat
temporarily regis-
tered under the
Panamanian Flag but
actually having
Brownsville as its
home port.

Dear Sir:

Your letter of November 24, 1947, is as follows:

"This Department is uncertain as to the
application of House Bill 379, Section 10,
Paragraph B, as it applies to a boat owned
and operated under the following conditions:

"The boat in question, The Lulu, is own-
ed by Robert P. Miller, of McAllen, Hidalgo
County, Texas, a native Texan. Mr. Miller
has lived in Hidalgo County for many years.
Mr. Miller and his brother own two food pro-
cessing plants, one at San Carlos, in Hidalgo
County, and one in Mission, Hidalgo County,
Texas. Mr. Miller purchased this boat from
the Maritime Commission of the United States,
and has a temporary registration under the
Panamanian Flag, inasmuch as the vessel has
been used by Miller in South American fruit
trade. The boat has never been used in any
type of fishing operations. This boat, while
its temporary home registered port under the
admiralty laws is the City of Panama, actually
operates out of Brownsville, Cameron County,

Texas, as its home port. This boat has a
United States customs export number assigned
to it. Mr. Miller desires to use this cargo
boat for the purpose of exporting shrimp from
Mexico. These shrimp will not be taken from
boats at sea, but will be purchased at a Mexi-
can port, packaged and exported under a Mexi-
can export license and bill of lading, and
brought over water to Brownsville and there
transported to their food processing plants
for handling, and after the shrimp have been
processed, will be sold throughout Texas and
the United States generally.

"We shall appreciate your opinion on the
following questions:

"1. Is inspection tax due on a cargo of
shrimp or other edible marine products when
brought into this State aboard the boat above
described, when said products were brought in
from outside of the jurisdictional limits of
this State?

"2. May a boat as above described be li-
censed with a fish boat license and thereby be
eligible for the above described operations
without payment of inspection tax?"

The pertinent provisions of House Bill 379, be-
ing Chapter 59, of the Acts of the General Laws of the
50th Legislature, Regular Session, p. 86, is an amendment
of Vernon's Annotated Penal Code, Art. 934b-1, and is as
follows:

"Sec. 2. That Section 10 of Article
934b-1, Penal Code of Texas, the same being
Acts, 1945, Forty-ninth Legislature, page
78, Chapter 55, Section 1, be amended so as
to be and hereafter read as follows:

"'Section 10. Whereas, the taking of
fish and marine life outside of the terri-
torial waters of the State of Texas affects
and endangers the supply within the State;
and whereas the State of Texas has no ade-
quate means of supervision and inspection
of the sanitary conditions, and of sanitary
control and inspection of the personnel of

unlicensed boats or vessels operating out-
side of the territorial waters of this
State and engaged in commercial fishing;
and whereas such boats and vessels may dis-
charge their cargo and sell their marine
products in Texas ports without license or
supervision; and whereas such practice en-
dangers the life and health of the citizens
of the State of Texas; and the supply of
game and fish within the State; therefore:

"'(a). It shall be unlawful for any
boat or vessel engaged in commercial fish-
ing, which said boat or vessel is not licensed
under Article 934 of the Penal Code of Texas
as amended, to discharge or unload any com-
mercial cargo of fish, shrimp, oysters or
other marine products, or to sell or process
the same within the State of Texas unless and
until the same has been duly inspected at a
port of entry as hereinafter provided and
found to be in a sanitary condition under the
rules and regulations as hereinafter provided
and shall have paid or secured the payment of
the inspection fee or tax as hereinafter pro-
vided for the inspection thereof.

"'(b). There is hereby levied an in-
spection fee or tax of Ten Dollars ($10) for
each one hundred (100) pounds or fraction
thereof of any cargo of fish, shrimp, oys-
ters or other marine products sought to be
discharged or unloaded from any unlicensed
commercial fishing boat or vessel within the
territorial limits of Texas. And the same
shall be paid or secured to be paid by a cash
or security bond made payable to the Game,
Fish and Oyster Commission of Texas, as a
prerequisite for inspection and the unloading
and discharge thereof.

"'(c). The Game, Fish and Oyster Com-
mission is hereby authorized to employ such
necessary personnel and patrol boats in order
to enforce the provisions of this Act and the
jurisdiction of the State of Texas, within
territorial limits as provided by law.

"'(d). The Game, Fish and Oyster Depart-
ment shall provide a suitable number of ports

of entry for such unlicensed <u>commercial fish-</u>
<u>ing vessel</u>, and no such cargo as above pro-
vided may be unloaded or discharged except in
such ports of entry, and then only after no-
tice and application to the official and agent
of the Department at such port of entry and
after inspection. And the Department is here-
by authorized, acting in conjunction with the
State Health Department of Texas to provide for
rules and regulations governing such inspec-
tion including such bacteriological, chemical,
and toxic tests as may be required, and for
blood tests and personal examinations of the
personnel and members of the crew of such un-
licensed boats or vessels; and based upon such
rules and regulations to determine whether or
not the unloading, discharge, processing or
sale of such cargo shall be detrimental to the
health and welfare of the citizens of the State
of Texas; and no suit shall ever be filed or
judgment granted against the Game, Fish and
Oyster Commission, its officials or agents by
reason of any delay resulting in the damage to
any cargo or by reason of the failure  to grant
any permit for the unloading, discharge, pro-
cessing or sale of such cargo.'"

Article 934, Penal Code of 1925, mentioned in
subsection (a) of Section 10 was superseded and repealed
in 1933 by Acts 43rd Legislature, 1st C. S., p. 85, which
Act, as subsequently amended, is now Article 934a, V.P.C.
The provisions thereof with which we are here concerned
respectively read:

"Section 1. The following words, terms
and phrases used in this Act are hereby de-
fined as follows:

"(a)  A 'commercial fisherman' is any
person who takes fish or oysters or shrimp
or other edible aquatic products from the
waters of this State, for pay, or for the
purpose of sale, barter or exchange.

"Section 2. Before any person in this
State shall engage in the business of a 'com-
mercial fisherman' . . . or use or operate a
. . . boat . . . for the purpose of catching
or taking any edible aquatic life from the
waters of this state for pay, barter, sale or

exchange, the proper license provided for in this Act privileging them so to do shall first be procured by such person from the Game, Fish and Oyster Commission of Texas or from one of its authorized agents."

"Section 3. The license and the fees to be paid for same are hereby provided for in this Act and are as follows:

"(1) Commercial Fishermen's License, fee Three Dollars ($3.00).

". . .

"(7). Fish Boat License, for boats equipped with a motor of any kind or with sails, fee Three Dollars ($3.00)."

Article 934b-1, V.P.C., was enacted in 1939 (Acts 46th Leg., H. B. 683, p. 238), amended in 1945 (Acts 49th Leg., Ch. 55, p. 78 and again amended in 1947 (Acts 50th Leg., H. B. 379, Ch. 59, p. 86). The first two sections thereof respectively read:

"Section 1. 'A non-resident commercial fisherman' for the purposes of this Act is hereby defined as follows:

"Any person who is a citizen of any other state, or any person who has not continually been a bona fide inhabitant of this State for a period of time more than twelve (12) months; the word 'person' shall include partnership, associations and corporations who have not continually had a bona fide place of business in this State for a period of time more than twelve (12) months, and who takes, assists in taking or catching, fish or shrimp or oysters, or any other edible aquatic life from the tidal salt waters of this State for pay or for the purpose of sale, barter or exchange.

"Section 2. A 'non-resident commercial fishing boat' for the purposes of this Act is hereby defined as follows:

"Any boat or vessel, which is registered in any other state, or which has not continually

been registered in this State for a period of time more than twelve (12) months, or which is not owned by any person, partnership, association of persons or corporation which has had a bona fide place of business in this State for a period of time more than twelve (12) months, and which is used for the purpose of taking, or assist in taking or catching, fish, shrimp, oysters or any other edible aquatic life from the tidal salt waters of this State for pay or for the purpose of sale, barter or exchange."

Section 3 requires a non-resident commercial fisherman to obtain a license, the fee for which is $200.00 from the Game, Fish and Oyster Commission, or one of its authorized agents, before he may legally take or assist in taking any fish, shrimp or oysters or any other edible aquatic life from the tidal salt waters of this State.

Section 4 likewise requires a non-resident commercial fishing boat to obtain a license to be known as "Non-resident Commercial Fishing Boat License," the fee for which is $2500.00 from the Game, Fish and Oyster Commission or one of its authorized agents before such boat may legally be used for the purpose of taking or assisting in taking any fish, shrimp, oysters or any other edible aquatic life from the tidal waters of this State.

We think it is apparent that a boat license issued under the provisions of Article 934a may properly be termed "a residential commercial fishing boat license." Sec. 4a, Art. 934b-1, V.P.C. A boat license issued under the provisions of Sections 2 and 4 of Article 934b-1 is a "Non-resident Commercial Fishing Boat License." A boat or vessel licensed under either of these Articles is granted the privilege of taking, or assisting in taking or catching fish, shrimp, oysters or any other edible aquatic life from the tidal salt waters of this State for pay or for the purpose of sale, barter or exchange. A boat or vessel so licensed is "engaged in commercial fishing" when used for the purpose or business for which it was licensed, and is a "commercial fishing boat or vessel", within the meaning of these statutes.

We construe Subsection (a), Section 10 of Article 934b-1, to make it unlawful for any boat or vessel "engaged in commercial fishing", which is not licensed

under the laws of this State as a residential commercial fishing boat, to discharge or unload any commercial cargo of fish, shrimp, oysters or other marine products, or to sell or process the same within this State until the same has been inspected at a port of entry; found to be in a sanitary condition, and the inspection fee or tax, provided for in Subsection (b), paid or secured as therein provided.

Subsection (b) of Section 10 levies an inspection fee or tax of Ten Dollars ($10) for each one hundred (100) pounds or fraction thereof of any cargo of fish, shrimp, oysters or other marine products sought to be discharged or unloaded from any unlicensed commercial fishing boat or vessel within the territorial limits of Texas.

However, under the facts submitted by you, The Lulu is not "engaged in commercial fishing" and is not a "commercial fishing boat or vessel", within the meaning of Articles 934a and 934b-1, Vernon's Penal Code. Therefore, Section 10 of Article 934b-1, Vernon's Penal Code, which provides for an inspection tax, does not apply.

## SUMMARY

A boat registered in the Republic of Panama and used exclusively as a cargo boat for exporting shrimp from Mexico to Brownsville, Texas is not "a commercial fishing boat" and is not "engaged in commercial fishing" within the meaning of those terms as used in Article 934a and Article 934b-1, V. P. C., and is not subject to the payment of the inspection fee or tax imposed by Section 10 of Article 934b-1, V. P. C., on cargoes of boats or vessels engaged in commercial fishing, when the shrimp are "purchased at a Mexican Port, and are packaged and exported under a Mexican Export License and Bill of Lading."

Yours very truly,

ATTORNEY GENERAL OF TEXAS

APPROVED:

*Price Daniel*

ATTORNEY GENERAL

By *David Wuntch*

David Wuntch
Assistant

DW/wb/lh/mw/erc